SPOT–A–POT, INC.; and Shelley Massa, Appellants,

v.

STATE RESOURCES CORPORATION, Appellee.

No. 2007–CA–002018–MR.

Court of Appeals of Kentucky.

Feb. 13, 2009.

Janice M. Theriot, Laurence J. Zielke, Louisville, KY, for appellant.

Steven A. Brehm, Claude R. Bowles, Jr., Louisville, KY, for appellee.

Before LAMBERT, STUMBO and THOMPSON, Judges.

## OPINION

THOMPSON, Judge.

This is an action to enforce a settlement agreement between State Resources Corporation (SRC), Spot–A–Pot, Inc., and Shelley Massa at a mediation conducted between the parties. The Jefferson Circuit Court enforced the settlement agreement as proposed by SRC and Spot–A–Pot and Massa appealed.

In 2002, Massa entered into a loan agreement with U.S. Bank to obtain financing for its business operations. In conjunction with the loan, a security agreement was executed in which Spot–A–Pot pledged its inventory and equipment as collateral for the loans and Massa gave her personal guaranty. Pursuant to its terms, Spot–A–Pot was required to make monthly payments. After the two loans were subsequently assigned to SRC, it filed a UCC security interest in Spot–A–Pot's collateral.

In 2005, SRC filed a complaint against Spot–A–Pot and Massa alleging that Spot–A–Pot had defaulted on the loans. Spot–A–Pot filed a third-party complaint against U.S. Bank alleging breach of contract and fraud based on its allegation that a U.S. Bank employee suggested a loan package that included securing $90,000 to manage cash flow, purchase new equipment, and pay off existing loans. Spot–A–Pot contends that in anticipation of the $90,000 loan, over a two month period, it and U.S. Bank executed two notes for $30,000 and $26,931. However, U.S. Bank never funded the $90,000 loan, which Spot–A–Pot contends fraudulently induced it into executing the two notes subject to the SRC assignment. Consequently, as a defense to SRC's action, Spot–A–Pot and Massa asserted that SRC is not a holder in due course and, therefore, was subject to all claims and defenses Spot–A–Pot and Massa have against U.S. Bank.

Following discovery and unsuccessful attempts to negotiate a settlement agreement, the parties entered into mediation and negotiated a settlement that resolved

the claims between Spot–A–Pot, Massa, and SRC but not between Spot–A–Pot, Massa, and U.S. Bank. It is the terms of the settlement agreement that are at issue in the present controversy.

At the mediation conference, the parties signed a handwritten document entitled *"Partial Settlement of SRC v. Spot–A–Pot & Massa v. U.S. Bank"* with the explicit statement that *"Spot–A–Pot v. U.S. Bank"* remained open. The document in bullet-point format provides the following terms: (1) settlement of loan I and loan II for $66,000; (2) the first payment due on Feb. 15, 2007; (3) ten-day default period; (4) six-year amortization with a fifteen-year balloon payment; (5) $1,165.27 per month for 59 payments; (6) a $13,377.87 balloon payment, including all unpaid principal and interest (final payment); (7) no down payment; (8) prime interest at 8.25% (nonvariable); (9) a confessed judgment for $83,496.23; and (10) formal release and settlement documents to be drafted and to include a full release and hold harmless provision.

Soon after the mediation conference, SRC's counsel forwarded Spot–A–Pot and Massa's counsel a formal judgment as well as a release and settlement agreement containing the terms of the bullet-point document; however, it also contained additional terms, which Spot–A–Pot and Massa contend, were not included in the agreement reached at the mediation conference. Specifically, it objects to the following: provisions imposing personal liability on Massa; a provision for continuation of the security interest; provisions for acceleration of remedies; and a provision for further assurances.

After the parties were unable to reach a consensus concerning the disputed terms, Spot–A–Pot filed a motion to enforce the settlement agreement as set forth in the bullet-point document signed on the date of the mediation conference. SRC filed a cross-motion to enforce its proposed settlement agreement. In response to SRC's motion, Spot–A–Pot and Massa objected to SRC's inclusion of extrinsic evidence with its motion on the basis that the bulletpoint document is not ambiguous and is limited to its terms.

The trial court held a hearing during which it heard counsel's version of the oral terms agreed upon at the mediation conference. It further had before it the documents submitted by SRC, including correspondence between the parties' counsel concerning the terms of the settlement and affidavits submitted by Steven Brehm, SRC's counsel, and Eric Jensen, U.S. Bank's counsel.

Mr. Brehm stated that the parties agreed that the "hold harmless" provision referred to in the bullet-point document was to include language that Spot–A–Pot and Massa would not assert any defenses they had against U.S. Bank and that it was not releasing Massa from her personal guaranty. He further stated that there was no waiver of SRC's security interest in the collateral. Mr. Jensen, counsel for U.S. Bank who was present during the mediation and breakout negotiations, confirmed the statement made by Mr. Brehm and specifically stated that: "I never understood it to be SRC's intention (a) to waive or eliminate Ms. Massa's personal guaranty of Defendant's debt, or (b) to waive or give up the collateral that was already in place to secure the Defendant's debt." According to Mr. Jensen and Mr. Brehm, the only terms of the loans renegotiated were the amounts and payment terms.

Based on the evidence presented, the trial court granted SRC's motion to enforce the settlement agreement it proposed, including the renegotiation of the payment terms, and found that all other

terms of the loan documents remained in full force and effect.

■■■ On review, we are guided by the following legal principles. A settlement agreement is a contract and, therefore, is governed by contract law. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky.2003). The construction and interpretation of a contract is a matter of law for the court. *See Morganfield Nat. Bank v. Damien Elder & Sons*, 836 S.W.2d 893 (Ky.1992). Our review of the trial court's decision is *de novo* without deference to the trial court's interpretation. *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky.App.1998). Whether the trial court can consider evidence extrinsic to the contract depends upon whether the contract is ambiguous or the parties' intentions can be determined from the four corners of the documents. *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer District*, 174 S.W.3d 440, 448 (Ky.2005).

■■■ Turning to the present facts, it is noteworthy that frequently it is impossible to generate a formal settlement document at the mediation conference. While such is desirable and would avoid controversies such as that now before this Court, reason dictates that the final formal settlement agreement must be drafted upon the oral terms reached and informal notations made at the conclusion of the mediation conference. However, an oral settlement agreement is nevertheless binding and enforceable. *See General Motors Corporation v. Herald*, 833 S.W.2d 804 (Ky.1992).

We agree with SRC that the bullet-point document does not encompass the entire agreement of the parties and that the trial court properly considered extrinsic evidence to discern the intent of the parties. *See Hammon v. Kentucky Central Life & Accident Ins. Co.*, 289 S.W.2d 726, 728 (Ky.1956). Most telling, the bullet-point document states that a formal release and settlement documents would follow its execution. Moreover, correspondence between counsel following the SRC's settlement agreement draft indicates that Spot–A–Pot and Massa acknowledged that the bullet-point document was not the complete agreement of the parties. Finally, counsel for SRC and U.S. Bank confirmed that the terms of the parties' agreement were as proposed by SRC. There was an abundance of evidence that an agreement was reached as detailed in the settlement agreement submitted by SRC.

Spot–A–Pot and Massa advance two arguments. They contend that there was no evidence submitted to the trial court. They ignore the affidavits filed and argue that the correspondence between the parties' counsel was not evidence. A hearing was held, and the parties were afforded the opportunity to present evidence but Spot–A–Pot and Massa did not seek to present additional evidence. We find no error.

■■■ Finally, Spot–A–Pot and Massa contend that the trial court failed to render sufficient findings of fact to support its order and judgment. However, the failure to request specific findings pursuant to CR 52.04 precludes our review of this issue.

Based on the foregoing, the order and judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.