RENDERED: SEPTEMBER 23, 2010
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

FINAL

2008-SC-000735-DG

DATE _Althea Hicks 12-16-70_

HAZARD COAL CORPORATION; WHITAKER
COAL CORPORATION; PERRY COUNTY COAL
CORPORATION; LOCUST GROVE, INC.; AND
TECO COAL CORPORATION

APPELLANTS

ON REVIEW FROM COURT OF APPEALS
V.          CASE NO. 2007-CA-001712-MR
PERRY CIRCUIT COURT NO. 02-CI-00499

LARRY J. KNIGHT AND EILEEN KNIGHT,          APPELLEES
AND, LARRY E. KNIGHT AND MARY KNIGHT

**OPINION OF THE COURT BY JUSTICE VENTERS**

**REVERSING**

Appellants Hazard Coal Corporation, Whitaker Coal Corporation, Perry

County Coal Corporation, Locust Grove, Inc., and TECO Coal Corporation

appeal from a decision of the Court of Appeals that reversed a judgment of the

Perry Circuit Court on the grounds that the Perry Circuit Court improperly

conducted a bench trial in contravention of Appellees' (Larry J. Knight, Eileen

Knight, Larry E. Knight, and Mary Knight) demand for a jury trial in the

proceedings. For the reasons explained below, we agree with the Court of

Appeals' conclusion that Appellees had not waived their right to a jury trial.

However, we further determine that Appellants were entitled to summary

judgment dismissing Appellees' complaint. Accordingly, we reverse the Court

of Appeals and remand the case to the Perry Circuit Court for entry of summary judgment in favor of Appellants, and dismissal of Appellees' claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellees are the owners of two contiguous tracts of surface property located on Fourseam Branch in Perry County. Appellants collectively are the owners of the minerals underlying the tracts and all of the rights and privileges thereunto granted by way of a severance deed filed in 1910 (hereinafter "Severance Deed") which severed the coal, minerals, and mineral products from the surface property.

In connection with their coal mining operations in the area, Appellants use and maintain a three-mile long coal haul road, part of which runs across the surface property owned by Appellees. The road runs from Kentucky Highway 1096 to the Davidson Branch facility, which is a site used by Appellants for moving their coal through the distribution chain. This facility includes a tipple, coal processing machinery, and a unit train loading facility to load coal onto railroad cars. It is undisputed that, in order to transport coal into the facility, Appellants use the road to haul coal mined from other, non-adjacent mineral tracts in the area; to haul supplies into the facility; and to haul refuse out of the facility. It is the use of the road for these purposes, as opposed to its use to transport coal extracted from beneath Appellees' tracts or to remove coal as necessary from adjacent tracts that is the basis of this dispute.

Believing that Appellants were impermissibly using the coal haul road, on September 30, 2002, Appellees filed a complaint in Perry Circuit Court alleging trespass by Appellants. More specifically, Appellees alleged that Appellants:

> wrongfully entered upon and mined coal and hauled other coal across plaintiff[s]' land, hauled rock, sludge, and waste from other land across plaintiffs' land, and erected power lines upon and across plaintiffs' land, otherwise used and utilized plaintiffs' land, or caused others to do so, from plaintiffs' land . . . excavated the land and destroyed and removed timber there from, all owned by the plaintiffs, without right, title, claim, interest or authority, and without consent or permission from the plaintiffs, and thereby damaged, destroyed and wasted said land.[1]

In addition, Appellants specifically demanded a jury trial upon all issues.

In their respective answers, Appellants denied trespassing upon Appellees' surface property and asserted that they had the right to use the road in the manner complained of pursuant to the rights and privileges granted to them in the Severance Deed. Among other things, Appellants also pled as an affirmative defense an easement by prescription entitling them to employ the road as used. Like Appellees, all of Appellants except for Hazard Coal Corporation demanded a jury trial in their initial pleading.

The trial court denied the parties' motions for summary judgment, and a jury trial was scheduled. However, at a pretrial conference a few days before the scheduled trial date, the trial court *sua sponte* announced that it would conduct a bench trial on all issues except damages because a jury would be unable to understand the case. Appellees did not thereafter challenge the trial

---

[1] Only the claim relating to the coal haul road is before us.

3

court's decision to have a bench trial. They appeared for the bench trial, announced ready, and fully participated in the proceeding.

Following the bench trial the trial court found "by a preponderance of evidence" that Hazard Coal had a prescriptive easement encompassing the coal haul road. Because of its ruling upon the prescriptive easement issue, the trial court found it unnecessary to address Appellants' argument that the Severance Deed conferred them with the right to use the road. In their motion to alter, amend, or vacate, the Appellees argued, among other things, that the trial court denied them the jury trial upon all issues which they had demanded in their complaint. The motion was denied.

On appeal, the Court of Appeals determined that the trial court had improperly denied the Appellants' right to trial by jury. Therefore it did not reach the merits of the prescriptive easement issue; nor, did it address the parties' competing interpretations of the Severance Deed's language.

We granted discretionary review to examine whether a party, after demanding a jury trial, may waive that right merely by failing to object to the trial court's *sua sponte* declaration that it would hear the case by bench trial. Upon review, we agree with Appellees that the failure to conduct a jury trial was error. However, we further conclude that Appellants were entitled to summary judgment upon their claim that the Severance Deed entitles them to use the road to transport coal mined from non-adjacent tracts to the Davidson Branch facility and to transport refuse away from the facility.

4

## II. APPELLEES DID NOT WAIVE THEIR RIGHT TO A JURY TRIAL

Appellants first contend that the Court of Appeals erred in its conclusion that Appellees did not waive their right to a jury trial after initially demanding one in their original complaint. They argue that waiver of that right occurred when Appellees did not object to the trial court's announcement that it would cancel the jury trial and have a bench trial, and thereafter acquiesced to the bench trial by appearing, announcing ready, and fully participating in that proceeding. They contend that Appellees would have welcomed a favorable verdict at the bench trial, but only after losing at trial, did they object and seek a "second bite at the apple."

### A. The Trial Court's Ruling

A jury trial was initially scheduled for February 24, 2006. However, during a pretrial conference on February 20, 2006, the trial court announced, *sua sponte*, that it would conduct a bench trial on all issues except damages. The court explained:

> [T]here is no way that a jury can understand that part of it to even answer the questions, you all have not been able to even formulate the questions for them to answer. Therefore what I am going to do is this; I am going to have Friday a bench trial on the issue of whether or not that deed . . . construction of the deed. I'm gonna hear all evidence on the use . . . . Then I'm gonna decide whether or not . . . the actions of the company have . . . violated . . . the conditions of the deed . . . . I've got to hear all the facts and then I've got to apply the facts to my construction of the deed. I do not think a jury can do that. You all have convinced me of that . . . . Then if I decide one way then we will have a jury trial on damages; if I decide the other way we won't . . . .
>
> I may be wrong, and I'm sorry if I'm not following the precedent of the Commonwealth of Kentucky, but you know, you got to realize

I'm human, I'm trying to follow it . . . . You know cite me something in the law that says I have to be right all the time.

The court further stated:

. . . . Do you all understand what I've done today and what we are going to do? Put on every bit of proof, like I say Mr. Polly [counsel for the Appellees]. I may decide against you, I may decide against them, but I'm going to hear every bit of the evidence.

. . . . We will resume at 9:00 o'clock Friday morning to have all your proof in. It will be a bench trial regarding the construction of the deed and usage.

Thus, the trial court left no doubt that the bench trial would be in lieu of a jury trial upon all issues, except upon the issue of damages if Appellees prevailed. Significantly, it is clear from the record that the trial court knew of the parties' demands for a jury trial, but persisted with its decision.

## B. Discussion

"The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution." Ky. Const. § 7. Our Constitution designates no other right as one which "shall be held sacred." This right is incorporated into CR 38.01, which states as follows: "The right of trial by jury as declared by the Constitution of Kentucky or as given by a statute of Kentucky shall be preserved to the parties inviolate." *See also Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 819 (Ky. 1992) (The Kentucky Constitution, Sec. 7, preserves "the ancient mode of trial by jury." A "civil cause of action" for "damages sustained" is the classical textbook paradigm of an action at law

6

wherein "[t]he constitution guarantees a trial by jury in cases of this character.").

CR 38.04 provides that the failure to properly demand a jury trial acts as a waiver of the right, but also imposes, once the right is demanded, a significant restraint on the withdrawal of the demand. The rule states: "The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5.05[2] constitutes a waiver by him of trial by jury. *A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.*"[3] (emphasis added).

Similarly, CR 39.01, imposes a strict, and unambiguous, procedural barrier to the waiver or withdrawal of a jury trial demand once having been made:

> When trial by jury has been demanded as provided in Rule 38, the action *shall* be designated upon the docket as a jury action. The trial of all issues so demanded *shall* be by jury, *unless* (a) *the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury,* or (b) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of the issues does not exist under the Constitution or Statutes of Kentucky.

(emphasis added)[4]

---

[2] CR 5.05 addresses the general rules for the filing of a complaint and other pleadings and papers with the office of the clerk.

[3] In using the plural "parties," the rule mandates that if *any* of the parties demands a jury trial, then *all* parties must agree to a waiver of the demand. In this vein, we note that *all* parties to the proceeding, excepting Hazard Coal, demanded a jury trial. Thus, it is not only the Appellees' demand that is at issue.

[4] There is no allegation that section (b) of the rule applies under the facts of this case.

"The constitutional term 'inviolate' means that the right to trial by jury is unassailable. Henceforth, legislation and civil rules of practice shall be construed strictly and observed vigilantly in favor of the right and is not to be abrogated arbitrarily by the courts. The constitutional right to a jury trial cannot be annulled, obstructed, impaired, or restricted by legislative or judicial action." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 908 S.W.2d 104, 108 (Ky. 1995). Moreover, as with statutes, we interpret the civil rules in accordance with their plain language. *Lanham v. Commonwealth*, 171 S.W.3d 14, 21 fn 9 (Ky. 2005).

The mandate of CR 39.01 is unmistakable in its clarity. Its plain and forthright language affords no other construction but that once a proper demand for a jury trial has been made, the trial *shall* be by jury *unless* there is either a written stipulation filed with the court, or an oral stipulation of waiver made in open court. "In common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command and . . . must be given a compulsory meaning." *Black's Law Dictionary* 1233 (5th ed. 1979). "Shall means shall." *Vandertoll v. Commonwealth*, 110 S.W.3d 789, 795-796 (Ky. 2003).

Here, there is no dispute that Appellees properly demanded a jury trial in their complaint initiating the lawsuit; that they did not file a written stipulation with the court waiving their right to a jury trial; and that they did not orally stipulate in open court that they waived their right to a jury trial. As such, the

8

result dictated by our civil rules could not be more certain – Appellees did not waive their right to a jury trial.

Appellants support their argument that the Appellees' silence in the face of the trial court's ruling waived the jury trial demand by directing our attention to *Equitable Life Assurance Society of the United States v. Taylor*, 637 S.W.2d 663 (Ky. App. 1982) (overruled on other grounds by *Louisville and Jefferson County Metropolitan Sewer Dist. v. Bischoff*, 248 S.W.3d 533 (Ky. 2007)). However, *Taylor* is distinguishable from this matter, because in that case the plaintiff, L & M Oil and Gas Company (whose successor in interest, Equitable, was making the argument on appeal) had moved for a bench trial, and signed off on the order granting the motion. The relevant discussion from *Taylor* is as follows:

> Constitutional rights are assurances given to each citizen of this Commonwealth that his interests will not be affected without specifically delineated safeguards. These rights are personal to each of us and cannot be circumvented or cast aside through the whims or caprices of others. However, this is not to say that should one wish not to avail himself of the protection which they offer, that he may not of his own volition choose affirmatively to deny their application. To state otherwise would be to reject the essence of freedom of choice upon which this nation was founded.

> Consideration, therefore, must be given to whether under the immediate facts there was an affirmative waiver of § 242's mandate of jury determination of damages. The relevant Ohio Circuit Court Order states in its entirety: "On the *Plaintiff's* Motion, these cases are set for *trial before the Court* on Monday, March 12, 1979. This the 2 day of March, 1979." (Emphasis in original added.)

> Appellant, the successor interest to Plaintiff below, suggests that the Order was prepared by Defendants (appellees herein) and that no motion in support of the Order from Plaintiff appears in the record. Indeed the Order does reflect preparation by Defendants,

but it also clearly recites that it was upon Plaintiff's motion and bears the "Have Seen" signature of Plaintiff's counsel.

No challenge to the wording of the Order was heard. Furthermore, on March 12 Plaintiff participated without objection in the hearing before the Court on the damage matter. Allegiance must be given to the time-worn but still vital axiom that a Court speaks through its records. There is not an iota of evidence in the record before this Court to indicate that such should not apply in this instance. The conclusion must be reached that Plaintiff below affirmatively waived its right to jury determination of damages.

*Id.* at 665.

Thus in *Taylor*, according to the wording of the order, the bench trial was effectively initiated by the party claiming a violation of its right to a jury trial, and counsel for opposing party physically signed off on the order setting a bench trial without objection. In this respect, there *was* a written stipulation in the record waiving the plaintiff's right to a trial by jury. Accordingly, we are unpersuaded that *Taylor* is controlling under the facts of this case.

Appellants also cite *Jones v. Gardner*, 262 Ky. 812, 91 S.W.2d 520, 523 (1936), for the principle that "a party taken by surprise during the trial must act promptly and will not be allowed to take a chance of getting a verdict, and then if he loses demand a new trial." While this rule remains a vital and important principle, nevertheless, we again note that the error at issue here is of constitutional dimensions. We have previously stated "[t]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" *Parson v.*

10

*Commonwealth,* 144 S.W.3d 775, 792 (Ky. 2004).[5] As demonstrated by our discussion, here, this constitutional standard for waiver is not met.

It is clear from the record that the trial court was aware of Appellees' demand for a jury trial. There was no necessity to bring the issue to the trial court's attention in order to preserve the argument. In this vein, we further note that our holding addresses the case where the trial court is, from the record, clearly aware of the jury demand, but chooses to proceed otherwise.

In summary, CR 38 and CR 39 require that once a jury trial has been demanded, there are only two ways the demand can be waived: by written stipulation appearing in the record; or by oral stipulation in open court. As proper waiver under neither method occurred in this case, the Court of Appeals properly held that Appellees did not waive their right to have all issues tried by a jury.

## III. THE RIGHTS AND PRIVILEGES GRANTED UNDER THE SEVERANCE DEED ENTITLED APPELLANTS TO SUMMARY JUDGMENT

Since we have affirmed the Court of Appeals upon the jury trial issue, Appellants ask us to address the argument that the trial court erred by failing to grant summary judgment dismissing Appellees' claims of trespass, on the grounds that Appellants' use of the road was authorized by, and in accordance with, the Severance Deed.

---

[5] (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, (1938)). *See also Barber v. Page,* 390 U.S. 719, 725 (1968) (also applying *Zerbst's* definition of a waiver); *Illinois v. Allen,* 397 U.S. 337, 343 (1970) (citing *Zerbst* ).

As further explained below, we conclude that there are no genuine issues of material fact concerning Appellants' disputed use of the road in its coal operations,[6] and that the sole issue remaining is therefore one of deed construction. The nature and extent of Appellants' actual use of the road is not disputed. As further explained below, by our interpretation, Appellants' use of the road is authorized by the rights and privileges granted to them under the Severance Deed. Pursuant to the language of the deed, Appellants are entitled to transport coal mined from non-adjacent tracts across the coal-haul road to the Davidson Branch facility; to move materials across the road to supply the facility; and to transport refuse from the facility. We therefore conclude that Appellants were entitled to summary judgment upon the issue, and remand for entry of an order dismissing Appellees' claims with prejudice.

"The general rule under CR 56.03 is that a denial of a motion for summary judgment is, first, not appealable because of its interlocutory nature and, second, is not reviewable on appeal from a final judgment where the question is whether there exists a genuine issue of material fact." *Transportation Cabinet, Bureau of Highways, Com. of Ky. v. Leneave*, 751 S.W.2d 36, 37 (Ky. App. 1988). There is, however, an exception to this rule that applies where: "(1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an

---

[6] The parties do disagree on the length and continuity of the use. While this would be relevant to summary judgment upon the issue of whether the Appellants have a prescriptive easement, it is not relevant upon the issue of whether the deed authorizes the disputed use.

12

entry of a final judgment with an appeal therefrom." *Id.* Because requirements for the foregoing exception to the general rule are met in this case, we choose to, as the parties have requested, review the trial court's denial of Appellants' motion for summary judgment.

In support of its position that it was entitled to summary judgment based upon construction of the Severance Deed, Appellants cite us to the following language from the deed:

> *[The grantor does hereby sell and convey unto the grantee] . . . . the exclusive rights-of-way for any and all Railroads and ways* and pipelines that may hereafter be located on said property by the "Grantee," its successors or assigns, under authority of said "Grantee," or assigns, in, under, concerning or appurtenant to the hereinafter described tract of land, together with the right to enter upon said lands, use and operate the same, and surface thereof and to make use of and for this purpose divert water courses thereon in any and every manner that might be deemed necessary or convenient for mining and removing therefrom, or otherwise utilizing the product of said minerals, *and for the transportation therefrom of said articles, and the right to use of such, as well as for the removal of the products taken out of any other land owned or hereafter acquired by the "Grantee."*

(emphasis added).

We first note that, "[t]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000). Accordingly, our review on appeal is *de novo*, without deference to the trial court's legal conclusions. *Id.*; *see also Spot-A-Pot, Inc. v. State Resources Corp.*, 278 S.W.3d 158, 161 (Ky. App. 2009). "'[I]n the absence of ambiguity a written instrument will be enforced strictly according to its

13

terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (citations omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (citation omitted).

We further note these additional general principles that are applicable to the Severance Deed:

> In the absence of further rights expressly conveyed or reserved, the surface rights of a mineral owner are limited to so much of the surface and such uses thereof as are reasonably necessary properly to mine and carry away the minerals. Where the grantee of minerals owns adjoining land through or over which it is practicable for the grantee to mine and remove the minerals granted, the grantee is not entitled to use the surface over the minerals for mining purposes because it is more convenient for the grantee.

> . . . .

> A mineral owner may not use the surface owned by the grantor in producing, marketing, or in any way handling the mineral produced on other or adjacent lands, unless and except to the extent that such rights may be given by the grant. Thus, a mineral owner generally has no right to use the surface of one tract to aid in the mining of another tract, even though such owner owns the minerals under both.

> . . . .

> Surface rights incident to mining may be expressly granted in the conveyance of the mineral rights. Where specified surface rights are expressly granted or reserved in connection with the mineral rights, the intention of the parties, as determined by the general rules of construction, govern in determining the extent of the mineral owner's rights and liability for compensation for the use of the surface. Where certain surface rights are specifically granted,

14

the court may not add to such enumerated rights other rights not specifically set forth in the conveyance.

58 C.J.S. *Mines and Minerals* § 214 (2009) (footnotes omitted).

Moreover, "[u]nder a deed such as this, the grantee may make a reasonable use of all of the rights conferred upon it by the terms of the deed without incurring liability for damages, but it may make no use of the surface that is unauthorized without being responsible therefor." *Pike-Floyd Coal Co. v. Nunnery*, 232 Ky. 805, 24 S.W.2d 614, 615 (1929). Further, a severance deed "should be construed most strongly against grantors in such deeds, and in favor of the grantees. But the rule can be invoked only when there is an ambiguity in the deed." *Id.* (citations omitted).

Upon examination of the applicable provisions of the deed, we conclude that *Columbia Gas Transmission Corp. v. Consol of Kentucky, Inc.*, 15 S.W.3d 727 (Ky. 2000), is dispositive. In *Columbia Gas*, we construed the following language contained in a 1903 coal severance deed:

> *[The grantor conveys to the grantee] the exclusive rights-of-way for any and all railroads, tram roads, haul roads and other ways,* pipe lines, telephone and telegraph lines that may hereafter be located on said land by the parties of the first part, their heirs, representatives or assigns, or by the party of the second part, its successors or assigns, or by any person or corporation with or without the authority of either of said parties, their, or its, heirs, representatives, successors or assigns . . . .

*Id.* at 729 (emphasis added).

15

In *Columbia Gas*, we noted that this language was typical of broad form deeds,[7] commonly known as "Northern form" deeds, used at the time. The operative language of the *Columbia Gas* deed reads: "*[The grantor conveys to the grantee] the exclusive rights-of-way for any and all railroads, tram roads, haul roads and other ways . . . .*" Comparison with the deed under present consideration discloses that the language is virtually identical: "*[The grantor does hereby sell and convey unto the grantee] . . . the exclusive rights-of-way for any and all Railroads and ways . . . .*"[8] While there are slight wording differences between the two deeds, as relevant to our review, the important point is that both conveyed "*exclusive* rights-of-way for *any* and *all . . .* ways." Thus, the deed language analyzed in *Columbia Gas* is functionally indistinguishable from the language in the Severance Deed before us.

As explained in *Columbia Gas*, this broad form language grants the mineral holder full "easement-granting power with respect to the surface estate," which is tantamount to "complete ownership of the surface as concerns

---

[7] The Broad Form Deed Amendment, Ky. Const. § 19(2), which was approved in 1988, is not applicable to the present situation. "Section 19(2) was intended and should be applied herein only to prohibit strip mining operations conducted pursuant to broad form deeds in the absence of the surface owner's consent." *Karst-Robbins Coal Company, Inc. v. Arch of Kentucky, Inc.*, 964 S.W.2d 419, 425 (Ky. App. 1997).

[8] In *Elk Horn Coal Corp. v. Kentucky-West Virginia Gas Co.*, 317 S.W.2d 472, 474 (Ky. 1958) the Northern form deed language is stated as follows: ""* * * exclusive rights-of-way for any and all railroads, tram roads, haul roads and other ways, pipe lines, telephone and telegraph lines that may hereafter be located on said land by the parties of the first part, their heirs, representatives or assigns, or by the party of the second part, its successors or assigns, or by any person or corporation with or without the authority of either of said parties, their, or its heirs, representatives, successors or assigns, and also the right to maintain, keep in repair and operate the same and said railroads, tram roads, haul roads, ways, pipe lines, telephone and telegraph lines, * * *[.]'"

right-of-way uses[.]" *Id.* at 729-730. Our full analysis upon the point was as follows:

> Citing Harry Caudill, *Theirs Be the Power: The Moguls of Eastern Kentucky* (U. of Ill. Press 1983) and Carolyn Clay Turner and Carolyn Hay Traum, John C.C. Mayo *Cumberland Capitalist* (Pikeville College Press 1983), Appellant asserts that Northern Coal and Coke Company used its Northern form of deed to acquire mineral interests in hundreds of thousands of acres of land in eastern Kentucky. On three occasions, our predecessor court was called upon to interpret the meaning of the so-called "easement-granting" clause quoted above. On each occasion, the clause was held to convey to the grantee of the mineral estate the easement-granting power with respect to the surface estate.
>
> In *Cornett v. Louisville & Nashville R. Co.*, 298 Ky. 95, 182 S.W.2d 230 (1944), the owner of the surface estate sought to enjoin the grantee of a Northern form deed from granting an easement to a railroad company for the construction of a commercial railroad line across the surface of the property. The surface owner asserted that the easement-granting clause only pertained to easements appurtenant to the mineral estate, i.e., those easements necessary for the mining and removal of coal or other minerals from beneath the surface of the property. The Court held that the easement-granting clause contained no such restriction and that the owner of the mineral estate possessed the sole power to grant a railroad right-of-way easement across the surface estate.
>
> In *Louisville & N.R. Co. v. Quillen*, Ky., 242 S.W.2d 95 (1951), the railroad sought to condemn a right-of-way across property severed by a Northern form deed. The issue was whether the condemnation proceeds were payable to the surface owner or to the owner of the mineral estate. It was held that the owner of the mineral estate, as owner of the easement-granting power, was entitled to the proceeds. (During the pendency of the litigation, the railroad purchased the right-of-way from the holder of the mineral estate, so the upshot was that the railroad was entitled to repayment of the condemnation proceeds which it had previously paid into court.)
>
> In *Elk Horn Coal Corp. v. Kentucky-West Virginia Gas Co.*, Ky., 317 S.W.2d 472 (1957), the issue was whether the owner of the mineral rights to forty-eight separate tracts of land could enjoin the construction of a pipeline across the surface of those tracts. The

17

plaintiff had acquired its interest in some of the tracts by Northern form deeds and in others by deeds which did not contain an easement-granting clause. The plaintiff was held entitled to relief with respect to the tracts acquired by Northern form deeds, but not with respect to tracts acquired by other forms of deed. The opinion had this to say about the easement-granting clause in the Northern form deeds:

> The *Cornett* and *Quillen* cases clearly uphold the claim of the coal corporation here that the mineral deeds gave it complete control over rights of way, and negative the contention of the gas company that the mineral deeds conveyed only *appurtenant* easements.
>
> . . . .
>
> The simple answer to this argument is, that the deed did not purport to convey an easement, but rather *ownership of the surface* as concerned future grants of easements. The grantee did not receive a mere easement, but the easement-granting power.
>
> . . . .
>
> As hereinbefore indicated in this opinion, we think the coal corporation had complete ownership of the surface as concerns right of way uses, and was not limited to appurtenant easements . . . . *Id.* at 475, 476 (emphasis in original).

*Id.* at 729-730.

As demonstrated by the above discussion, because the Severance Deed was a broad form, Northern deed, the grantee (Appellants' predecessor in interest) was conveyed under the deed ownership of the easement-granting power with respect to the surface estate of the Appellees' tracts.

This interpretation comports well with the Severance Deed's plain language. A "right of way" is defined as "[t]he right to pass through property owned by another." *Black's Law Dictionary* (8th ed. 2004); 25 Am Jur.2d.,

18

*Easements and Licenses*, § 5 (2010). *See also Sprint Communications Co., L.P. v. Leggett*, 307 S.W.3d 109, 115 (Ky. 2010). The Severance Deed conveyed the original grantee "exclusive" rights of passage "for any and all" (which is self-defining) "ways." A "way," as used here, is defined as "1. A passage or path. 2. A right to travel over another's property." *Black's Law Dictionary* (8th ed. 2004). Thus, by its plain language, the deed conveyed to the original grantee the exclusive right to pass across the Knight tracts for "any and all" purposes.

The language of the deed conveying any and all rights of way must be construed to mean what it says: *any and all rights of way.* It follows that it was within the power of the successors in interest to that right, Appellants, to grant themselves an easement for the purpose of transporting coal mined from non-adjacent tracts across the surface to the tipple; transporting supplies to the tipple; and transporting refuse back out of the tipple.

In summary, based upon our interpretation of the Severance Deed as discussed above, Appellants were entitled to summary judgment upon their defense that the deed language granted them the right to use the coal haul road consistently with their past and current practices.

## IV. CONCLUSION

For the foregoing reasons the judgment of the Court of Appeals is reversed, and the matter is remanded to the Perry Circuit Court for entry of judgment consistent with this opinion.

All sitting. Minton, C.J., Abramson, Cunningham and Schroder, JJ., concur. Noble, J., concurs in result only. Scott, J., concurs in result only, as, in his opinion, Appellees waived their right to a jury trial.


COUNSEL FOR APPELLANTS:

Charles Justice Baird
Baird & Baird, P.S.C.
P O Box 351
Pikeville, Kentucky 41502

Paul Randall Collins
Hollon & Collins
P O Box 779
Hazard, Kentucky 41702

Ronald Glenn Combs
Gullett, Combs & Bowling
P O Box 1039
Hazard, Kentucky 41702-5039


COUNSEL FOR APPELLEES:

Ronald Glen Polly
Polly & Smallwood
127 Main St., Suite C
P O Box 786
Whitesburg, Kentucky 41858