RENDERED:  OCTOBER 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1186-MR

JOHN WALTER ROUSH, II                                     APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KATHY W. STEIN, JUDGE
ACTION NO. 18-CI-04037

EMILIE LAUREN ROUSH                                       APPELLEE

OPINION
REVERSING IN PART,
VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  COMBS, GOODWINE, AND LAMBERT, JUDGES.

COMBS, JUDGE:  This case involves a post-dissolution dispute over the terms of

a property settlement agreement.  John Walter Roush, II, appeals orders of the

Fayette Family Court entered on March 27, 2020; July 11, 2020; and August 25,

2020, that:  construed the terms of a property settlement agreement incorporated

into the parties' divorce decree; granted the motion of Emilie Lauren Roush for an

award of attorney's fees; and denied John's motion to alter, amend, or vacate. After our review, we reverse the orders to the extent that they require John either to refinance a loan or to repay it immediately. We also vacate the award to Emilie of attorney's fees incurred with respect to this issue. But we remand on one issue as we shall discuss later in our Opinion.

John and Emilie married in September 2015 and separated in May 2018. Emilie filed a petition for dissolution of the marriage a few months later. John filed an entry of appearance in which he indicated that he did not intend to contest the petition for dissolution. He acknowledged that he did not have an attorney and waived notice of any further proceedings. The parties have no children.

The marriage was dissolved by the Fayette Family Court in a decree entered on July 1, 2019. The decree of dissolution incorporated a property settlement agreement executed by the parties on February 19, 2019. In relevant part, the parties' agreement provided as follows:

**II. DIVISION OF PROPERTY AND DEBT**

* * * *

6. Vehicles. The parties agree that John shall receive exclusive ownership of the 2016 Ford F-150 and will remove Emilie's name from the title of the vehicle no later than September 1, 2019. Emilie shall receive exclusive ownership of the 2014 Kia Forte. Any debt

owed on either of the vehicles shall be the responsibility of the party receiving ownership of said vehicle.

\* \* \* \*

8. <u>PNC Bank Loan</u>. The debt of the PNC bank loan which is in both Emilie's and John's names is to be equally born and divided between the parties. The parties will set up automatic payments to be withdrawn from their checking accounts monthly to timely satisfy their half of the minimum payment. Such payments will continue to be withdrawn in a timely fashion each month until the loan has been paid in full. The parties will provide proof of the automatic payment process being set up prior to the submission of this property settlement agreement.

\* \* \* \*

## III. MISCELLANEOUS PROVISIONS

\* \* \* \*

2. <u>Default</u>. The parties agree that in the event either party defaults in or breaches any of his or her respective obligations and duties as contained in this Agreement, then the defaulting or breaching party shall be responsible for and pay to the injured party, in addition to such other damages as any court may award, all of his or her attorneys' fees, court costs, and other related expenses incurred to enforce the provisions contained herein against the defaulting party.

3. <u>Bankruptcy</u>. The assumption of the indebtedness by the parties herein shall be considered an obligation directly related to the support and maintenance of the other spouse, although payments of said debts shall not be considered deductible or taxable as alimony, maintenance, or support for income tax purposes. The parties further stipulate that they intend that the debts and

liabilities assumed by them shall be non-dischargeable
under Section 523(a)(5) of the Bankruptcy Code.

On February 25, 2020, Emilie filed a motion to enforce the parties' settlement agreement and to have John held in contempt for violation of the terms of the divorce decree. Emilie stated that "John has not removed [my name] from the title [of the 2016 Ford F-150], nor has he taken steps to assume the debt." Emilie asked the court to use its inherent authority to sanction John for failing to comply with the requirements of the divorce decree. She also sought to recover $500 in attorney's fees pursuant to the provisions of KRS[1] 403.220.

John, *pro se*, filed a response on March 4, 2020. In a letter to the court, John explained that he had made attempts to refinance the truck loan to no avail in January 2018 and again in January 2019 -- before the property settlement agreement was signed in February 2019. He indicated that Emilie had agreed in August 2019 to give him more time to resolve the issue as long as he kept the truck payment current. He also indicated that he had been advised by an attorney to declare bankruptcy. He said that he had "reassured [Emilie] that I had no intentions of not continuing to pay on the vehicle or any other joint loans that we still had." He admitted that Emilie had explained to him that his failure to refinance the debt in his name alone was affecting her credit score and her ability

---

[1] Kentucky Revised Statutes.

to purchase a home.  Finally, John candidly admitted that it was unlikely that he would be able to refinance the debt owed on the truck.

At a hearing conducted on March 6, 2020, the family court decided not to order a continuance in order for John to have time to hire an attorney. Instead, he was questioned under oath.  Emilie did not testify.  Following the hearing, the family court ordered John either to refinance the truck debt or to sell the truck and satisfy the loan within twenty (20) days.  Emilie's motion for attorney's fees was denied.  The court's written order was not entered until March 27, 2020.

On April 6, 2020, John filed a motion to alter, amend, or vacate.  He contended that he did not fail to comply with the provisions of the property settlement agreement.  John argued that the agreement did not provide that the truck loan would be refinanced or that he would repay it immediately -- only that he would have Emilie removed from the certificate of title and that he would remain solely responsible for the debt.  John explained that it would be difficult to sell the truck given the limitations imposed by the pandemic and that the proceeds were not likely to cover the outstanding debt anyway, thus likely resulting in entry of a deficiency judgment against both parties.  He produced the documents necessary to have Emilie removed from the certificate of title and indicated that the

loan payments had remained current. In the alternative, John sought a new hearing.

On April 22, 2020, Emilie filed a supplemental motion to enforce John's obligation to make monthly payments toward the parties' PNC consolidation loan. She sought to have John held in contempt and to recover her attorney's fees in the amount of $1,404.00. John filed his objection to the supplemental motion.

During its hearing, the family court observed that the language of the agreement concerning the truck loan "was not very artfully drawn" but announced that John would nevertheless have to refinance the loan. Subsequently, John filed a motion requesting a written order pertaining to his motion to alter, amend, or vacate and a written order concerning Emilie's request for attorney's fees.

In an order entered on July 11, 2020, the family court recited as follows:

> the parties contemplated that they were required to transfer, refinance, obtain a cosigner or to take other action so that the other party to the marriage would have no encumbrance to their ability to borrow money nor any obligation to repay the debt in the event of default by the party receiving said vehicle.

The court concluded that by failing to have the truck loan refinanced, John had violated the requirements of its decree of dissolution. It denied John's motion to alter, amend, or vacate.

Next, the family court concluded that Emilie's motion to enforce the provisions related to the parties' PNC consolidation loan was moot because John had brought current his share of the loan repayment.

The court ordered John to do whatever was necessary (including selling the Ford F-150) to eliminate Emilie's financial responsibility for the truck loan within thirty (30) days. It granted Emilie's motion for attorney's fees and directed her to file an affidavit of counsel with respect to the work performed and the fees charged in the proceedings. The affidavit was filed on July 22, 2020, and it reflected attorney's fees totaling $2,565.00.

In an order entered on August 25, 2020, the family court concluded that the attorney's services and the amount billed were reasonable and necessary. It ordered John to pay to Emilie $2,565.00 within thirty (30) days. This appeal followed.

On appeal, John argues that the family court erred in its interpretation of the terms of the property settlement agreement. We agree.

Interpretation of a property settlement agreement is governed by contract law. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99 (Ky. 2003). Where a

contract is ambiguous, the court may consider extrinsic evidence concerning the circumstances surrounding its execution, its subject matter, the object sought to be accomplished, and the conduct of the parties. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381 (Ky. App. 2002). However, where the contract is not ambiguous, it will be enforced "strictly according to its terms[.]" *Frear*, 103 S.W.3d at 106.

A court interprets a contract's unambiguous terms by assigning the language its ordinary meaning and without resort to extrinsic evidence. *Wehr Constructors, Inc. v. Assurance Co. of America*, 384 S.W.3d 680, 687 (Ky. 2012). A contract is ambiguous where a reasonable person would find it susceptible of different interpretations. *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290 (Ky. 2010). However, "the fact that one party may have intended a different result is insufficient to alter the plain and unambiguous terms of a written contract." *Green v. McGrath*, 662 F. Supp. 337, 342 (E.D. Ky. 1986). Whether a contract is ambiguous is a question of law subject to our *de novo* review. *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829 (Ky. App. 2000).

After considering the disputed provision of the property settlement agreement, the family court held as follows:

> By stating that each party "shall receive exclusive ownership" of their respective vehicles and by stating "any debt owed on either vehicle shall be the responsibility of the party receiving ownership of said

-8-

vehicle," and having considered the testimony received during the hearing of March 6, 2020, the Court hereby finds that the parties contemplated that they were required to transfer, refinance, obtain a cosigner or to take other action so that the other party to the marriage would have no encumbrance to their ability to borrow money nor any obligation to repay the debt in the event of default by the party receiving said vehicle.

While we agree that the property settlement agreement provides that each party "shall receive exclusive ownership" of their respective vehicle and that "[a]ny debt owed on either of the vehicles shall be the responsibility of the party receiving ownership of said vehicle[,]" we do not agree that the disputed provision is ambiguous. Consequently, we are compelled to reverse the orders of the family court.

The disputed provision assigned the Ford F-150 to John and gave to him exclusive ownership of it. In Kentucky, a vehicle's titleholder is its owner. KRS 186.010(7). To this end, John agreed to have Emilie's name removed from the certificate of title. However, the mere act of having Emilie's name removed from the certificate of title would never have rescinded her obligation to repay the loan used to purchase the truck, nor would it have affected her ability to secure a home loan from another lender.

This is not a rare occurrence in a dissolution action. Ownership of the truck was turned over to John; however, pursuant to the loan documents, both parties remained contractually liable for repayment of the debt against it. This

-9-

result occurs because the lienholder has no legal obligation to remove the non-owner from the loan documents despite the parties' agreement in a dissolution proceeding.

While John could (and did) agree to make the entirety of the monthly loan payments, that agreement could not absolve Emilie from her outstanding and underlying financial obligation to the lender. Instead, John and Emilie could have agreed that John would refinance the original loan to pay off the existing debt against the truck. At that point, Emilie could have been released from her obligation to repay the loan, and the outstanding debt would no longer have affected her credit rating. However, this option was not included in the parties' property settlement agreement. Although John agreed that the truck loan would be his debt to pay, he did not agree to have the truck loan refinanced. His efforts to have the loan refinanced (undertaken even before the agreement was executed) had been fruitless.

The court speculated on what the parties may have "contemplated" -- despite the literal language of the agreement itself -- impermissibly embellishing and expanding the scope of its terms. By ordering John either to refinance the loan or to sell the truck and immediately repay the debt, the family court has construed the parties' agreement to include a provision that was not part of the bargain. The court erred in doing so.

The terms of the settlement agreement are unambiguous as to John's responsibility to repay the truck loan. However, he is under no obligation either to refinance the loan or to repay it immediately. Consequently, we reverse the family court's orders to the contrary. Furthermore, we vacate the award of attorney's fees to the extent that they relate to a resolution of the truck loan dispute. However, we remand the matter to the family court to consider whether an award of attorney's fees is appropriate with respect to the dispute concerning John's failure to keep timely the payment of his share of the PNC loan.

To recapitulate, we reverse the orders of the Fayette Circuit Court with respect to the truck. We remand for the limited purpose of considering whether an award of attorney's fees (incurred only to enforce the parties' agreement with respect to the PNC loan) is warranted.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Nathanael Cutler
Stanford, Kentucky

BRIEF FOR APPELLEE:

Christopher R. Jenkins
Lexington, Kentucky